| | | |
|---|---|---|
| NORTH CAROLINA | ) | IN THE GENERAL COURT OF JUSTICE |
| | ) | SUPERIOR COURT DIVISION |
| CABARRUS COUNTY | ) | 16 CVS _____ |

| | |
|---|---|
| TIMOTHY H. CHAPMAN, as, Administrator of the Estate of ALMA P. CHAPMAN, | ) ) ) ) |
| Plaintiff, | ) **COMPLAINT** |
| | ) **AND MOTION FOR EXPERT** |
| v. | ) **QUALIFICATION** |
| | ) |
| SSC CONCORD OPERATING COMPANY LLC (dba "Brian Center Health & Retirement/Cabarrus"), a Delaware Limited Liability Company; and JONATHAN D. RICHARD (a/k/a "J. Drew Richard"), Individual, | ) **(JURY TRIAL DEMANDED)** |
| Defendants. | ) |

NOW COMES PLAINTIFF, complaining of Defendants as follows:

1. This is a nursing home personal injury and wrongful death suit arising out of Alma P. Chapman's ("Ms. Chapman" or "Resident") residency at nursing home Brian Center Health & Retirement/Cabarrus, in Cabarrus County ("Facility").

## PARTIES

2. Ms. Chapman was a resident at Facility from March 22, 2014 until her death there on March 29, 2014.

3. Ms. Chapman died possessed of a claim for personal injuries and damages, which claim survived to her estate.

4. Plaintiff has been duly appointed, and is, Personal Representative of the Estate of Ms. Chapman (the "Estate").

5. The Estate is an estate open and pending in Cabarrus County, North Carolina, said estate bearing estate file number 14 E 466.

1



6. Plaintiff brings this action for Ms. Chapman's injuries and damages as a survival action and as a wrongful death action in behalf of resident's beneficiaries pursuant to North Carolina law.

7. Defendant SSC CONCORD OPERATING COMPANY LLC (dba "Brian Center Health & Retirement/Cabarrus"), ("SSC Concord" or "Facility") is and was at all relevant times a limited liability company organized under the laws of the state of Delaware.

8. SSC Concord did business in Cabarrus County, North Carolina at all relevant times.

9. SSC Concord is and was at all relevant times in the business of operating only one nursing home, which is the Facility.

10. SSC Concord held the license to operate the Facility at all times Ms. Chapman was a resident there.

11. SSC Concord operated and managed Facility at all relevant times.

12. Defendant Jonathan D. Richard ("Mr. Richard") was the Administrator of Facility during Ms. Chapman's residency at Facility.

13. Mr. Richard was at all relevant times and currently is a resident of North Carolina.

14. Mr. Richard, as Administrator, bore responsibility for directing all services at Facility.

15. At all times relevant to this action, Mr. Richard was an employee and/or agent of SSC Concord and acted in the course and scope of that employment and/or agency.

16. Mr. Richard also bears individual liability for his actions as the Administrator of Facility.

## FACTUAL SUMMARY/ALLEGATIONS

18. On or about March 19, 2014, Ms. Chapman was admitted to Carolina's Medical Center Northeast with, among other problems, high potassium.

19. She was discharged from the hospital on March 22, 2014 and admitted to Facility.

20. While under Facility's care, Facility failed to adequately monitor and assess Ms. Chapman for signs and symptoms of potassium problems, which led to Ms. Chapman's death from excessive potassium in her system.

2

21. The Facility:

    a. Failed to provide the minimum number of staff necessary to assist the residents of Facility, including Ms. Chapman, with their needs;

    b. Failed to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants, and medication aides (hereinafter "nursing personnel") to meet the total needs of Ms. Chapman;

    c. Failed to provide and ensure an adequate nursing care plan based on the needs of Ms. Chapman;

    d. Failed to provide and ensure adequate nursing care plan revisions and modifications as the needs of Ms. Chapman changed;

    e. Failed to provide supervision to ensure that an adequate nursing care plan for Ms. Chapman was followed by nursing personnel;

    f. Failed to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

    g. Failed to maintain medical records on Ms. Chapman in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized.

    h. Failed to adequately and appropriately monitor Ms. Chapman and recognize significant changes in Ms. Chapman's health status.

    i. On information and belief, Defendants were aware of systemic staffing problems at Facility throughout the residency of Ms. Chapman via labor, budgeting, and other reports which were available and reviewed by managers at some if not all levels of Defendants' corporate and organizational structure; and these staffing failures directly impacted the care to the residents, including Ms. Chapman.

    j. On information and belief, Defendants were aware of systemic problems within Facility relating to resident care.

22. As a direct and proximate result of these actions, omissions and/or failures, which are the bases for the claims set forth herein, Ms. Chapman suffered injuries and damages, including pain and suffering, medical expenses and other special damages, as well as:

    a. Permanent injury; and

    b. Death.

3

Case 1:16-cv-00370-LCB-JLW   Document 3   Filed 04/25/16   Page 3 of 11

23. The acts or failures of the Defendant(s), which are basis for the claims set forth herein, and the proximate cause of Ms. Chapman's injuries and damages, were either committed in reckless disregard of the rights of others, and/or grossly negligent, and/or fraudulent, and/or intentional, and/or committed with malice.

24. All damages alleged herein are alleged to be in excess of $25,000.00.

## CLAIM FOR RELIEF: ORDINARY NEGLIGENCE

25. Plaintiff here re-alleges and incorporates all other allegations set forth herein.

26. Defendants owed a duty to their residents, including Ms. Chapman, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

27. Defendants' employees owed a duty to residents, including Ms. Chapman, to exercise reasonable care in providing care and services in a safe and beneficial manner.

28. Defendants breached this duty by failing to deliver care and services that a reasonably careful person or company would have provided under similar circumstances and by failing to prevent the alleged injuries and damages to Ms. Chapman.

29. A reasonably careful nursing home operation (including the organizational parent/affiliate companies with knowledge and control over those operations), would foresee that the failure to provide the ordinary care listed above would result in devastating injuries to Ms. Chapman.

30. As a direct and proximate result of Defendants' negligence, Ms. Chapman suffered damages and injuries as previously alleged herein.

## CLAIM FOR RELIEF: MEDICAL MALPRACTICE

31. Plaintiff here re-alleges and incorporates all other allegations set forth herein.

32. Although the specific defendants other than Facility and Licensee are not alleged to be "health care providers" as defined and contemplated by N.C. Gen. Stat. §90-21.11 et seq., Plaintiff's claims for medical malpractice are nonetheless alternatively asserted against those specific defendants (both directly and via vicarious liability), in the event that the Court determines those defendants to in fact be "health care providers."

33. All Defendants are jointly and severally liable for the medical malpractice negligence of any or all of the other defendants, on the basis of those defendants' agency, employment, or other relationships.

34. Alternatively, to the extent that the Court deems those specific defendants to be "health care providers," Plaintiff's claims for medical malpractice are asserted against those specific defendants as well.

35. The acts and omissions of Defendants constitute both clinical and administrative medical malpractice negligence on the part of the Defendants, in that the Defendants:

    a. Owed a duty to provide Ms. Chapman with medical care and treatment in accordance with the standards and practices applicable to medical personnel with similar training and experience in the same or similar communities at the time of the acts and omissions alleged herein.

    b. Failed to exercise and/or possess a requisite degree of professional learning, skill, ability and care as are ordinarily possessed and exercised by other health care providers similarly situated considering the state of nursing and medical knowledge at the time;

    c. Failed to exercise their best medical judgment in the treatment and care of Ms. Chapman;

    d. Failed to exercise reasonable care and diligence in the application of their knowledge, skill and ability in the care and treatment of Ms. Chapman; and

    e. Failed to furnish nursing and medical services to Ms. Chapman in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in similar communities at the time of Ms. Chapman's treatment as required by N.C. Gen. Stat. § 90-21.12.

    f. Failed to act in accordance with the administrative and other standards of practice among similar health care providers situated in the same or similar communities under the same or similar circumstances at the time of the alleged act giving rise to the cause of action.

36. Ms. Chapman suffered the damages and injuries previously alleged herein and in an amount exceeding $25,000.00 as a direct and proximate result of Defendants' medical malpractice.

## CLAIM FOR RELIEF: WRONGFUL DEATH

36. Plaintiff here re-alleges and incorporates all other allegations set forth herein.

37. As a direct and proximate result of the negligence and/or medical malpractice of the Defendants as set forth previously herein, Ms. Chapman suffered injuries and harm resulting in her death.

5

38. As a direct and proximate result of the death of Ms. Chapman, Plaintiff and next of kin have been deprived of the care, assistance, society, companionship, and kindly offices of Ms. Chapman.

39. As a direct and proximate result of the negligence of Defendants and the ultimate death of Ms. Chapman caused thereby, Ms. Chapman's estate incurred medical expenses, other out of pocket expenses, and funeral expenses.

40. Pursuant to the wrongful death statute of North Carolina, N.C. Gen. Stat. §28A-18.2, and other applicable statutes in effect on the date of Ms. Chapman's death, demand is made for damages caused by the unlawful and wrongful death of Ms. Chapman as previously alleged, and is set forth in detail in N.C. Gen. Stat.§28A-18.2, to which reference is made and including the following:

    a. Hospital, medical, and ambulance expenses incident to the deadly injuries of Ms. Chapman;

    b. Compensation for Ms. Chapman's pain and suffering;

    c. The reasonable funeral expenses of Ms. Chapman;

    d. The services, protection, care, and assistance of Ms. Chapman, whether voluntary or obligatory to the persons entitled to the damages recovered;

    e. The society, companionship, comfort, and kindly offices of Ms. Chapman to the persons entitled to the damages recovered.

41. By reason of the wrongful death of Ms. Chapman, Plaintiff has been damaged and is entitled to recover of the Defendants a lump sum sufficient to compensate the estate of Ms. Chapman for the present monetary value of Ms. Chapman to her family, and for her services, protection, care and assistance, society, companionship, security, comfort and kindly offices to her next of kin and for funeral, hospital and medical expenses, all in an amount to be determined by a jury, but in any event an amount in excess of $25,000.00.

42. By reason of the wrongful death of Ms. Chapman, which was proximately caused by the negligent, willful, wanton, reckless, and gross acts of negligence by Defendants, as previously herein alleged, Plaintiff is entitled to recover punitive damages in an amount in excess of $25,000.00. The specific aggravating factors supporting punitive damages for wrongful death are set out under a separate claim for relief herein, and the same allegations are hereby incorporated herein by reference as if fully set forth.

## CLAIM FOR RELIEF: PUNITIVE DAMAGES

43. Plaintiff here re-alleges and incorporates all other allegations set forth herein.

44. The acts and omissions of Defendants as alleged previously herein were reckless and/or willful and/or wanton; and were performed in conscious disregard of and indifference to the rights and safety of resident. Defendants knew or should have known that the above acts or failures to act were reasonably likely to result in severe physical and/or mental suffering, as well as the to the other injuries and damages of Ms. Chapman alleged previously herein.

45. The officers, directors, or managers of the corporation participated in or condoned the aggravating conduct supporting punitive damages in this case.

46. Defendants' conscious disregard for, and encouragement of, understaffing at Facility, as more specifically alleged previously herein. Plaintiff alleges specifically, but not exclusively, that the conduct of Defendants supporting punitive damages includes:

    a. Understaffing of the Facility, and management's role in causing or ratifying the continuous understaffing of the Facility despite the risk for harm to residents.

    b. Defendants' knowledge that this understaffing would result in serious harm to Facility residents, including Ms. Chapman -- as well as residents at other of its facilities -- as more specifically alleged previously herein.

    c. Defendants' pursuit of monetary gain via a calculated plan to understaff and/or continue understaffing at its facilities, including Facility, despite the dangers to Defendants' residents at that facility and others. This plan was a widespread pattern and/or practice of Defendants; and had been continuing despite complaints from its residents and their families, including complaints in the form of lawsuits and litigation.

    d. The widespread nature of this pattern and/or practice of understaffing at Defendants' facilities created a dangerous atmosphere for patients/residents in Defendants' care in large numbers of Defendants' facilities, and over a substantial period of time.

47. Defendants' officers, directors, managers and managing agents at all relevant times knew, or in the exercise of ordinary care should have known, about the understaffing problem at Facility and other of their facilities, and failed to take action to correct the problem; instead ignoring this dangerous problem, and continuing to drain money/assets away from its facilities, including Facility, and ultimately into the accounts of those other persons and businesses controlling its nursing home operations. The resources drained away from these facilities could have been, and should have been, used to increase staffing levels.

48. On information and belief, Defendants continue to engage in practices similar to those which injured and killed Ms. Chapman, including, but not limited to, utterly inadequate skin care for the prevention of pressure ulcers and other skin breakdown and other skin breakdown.

49. As a direct and proximate result of Defendants' reckless, willful and wanton conduct, Ms. Chapman suffered the damages and injuries previously alleged herein.

50. Plaintiff is therefore entitled to punitive damages in an amount sufficient to deter Defendants and others similarly situated from engaging in such outrageous behavior, an amount that is, on information and belief, in excess of $25,000.00.

## COMPLIANCE WITH LIMITATIONS

51. Ms. Chapman, at the time of her admission to Facility, had impaired cognitive skills, and was no longer competent to handle her own affairs.

52. Ms. Chapman, at the time of her admission to Facility, did not have the conscious awareness necessary to allow him to later recognize that she had been a victim of nursing home abuse or negligence; or that her rights as a nursing home Ms. Chapman had been violated.

53. Ms. Chapman's incompetency, as previously alleged, continued until the time of her death.

54. Ms. Chapman's incompetency, as previously alleged, tolled all applicable statutes of limitations and/or repose.

55. Regardless of Ms. Chapman's incompetency, the claims set forth herein are being brought (and are thus within all applicable limitations/repose periods):

    a. Within two years of Ms. Chapman's death;

    b. Within three years of the commission of any medical malpractice by any of Defendants;

    c. Within three years of the negligence and related injuries to Ms. Chapman.

## RULE 9(j) COMPLIANCE AND MOTION FOR EXPERT QUALIFICATION (RE: RULE 9(j)(2))

56. Plaintiff objects to the pre-filing requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure. Rule 9(j) effectively requires plaintiff to prove her case before factual discovery is even begun, denies medical malpractice plaintiffs their rights of due process of law and equal protection under the law, the right to open courts, and the right to a jury trial, violates the separation of powers, and confers an exclusive emolument on health care providers, in violation of the United

States and North Carolina constitutions. Rule 9(j) violates the Seventh and Fourteenth Amendments of the United States Constitution, and Article I, sections 6, 18, 19, 25 and 32 and Article IV, sections 1 and 13 of the North Carolina Constitution.

57. Plaintiff objects to the requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure on the grounds that a Rule 9(j) certification is not required in this case, pursuant to Lewis v. Setty, 130 N.C. Capp. 606, 503 S.E.2d 673 (1998), appeal after remand, 140 N.C. App. 536, 537 S.E.2d 505 (2000); and Taylor v. Vencor, Inc., 136 N.C. App. 528, 525 S.E.2d 201 (2000).

58. Without waiving these objections, counsel for plaintiff provides the following information to comply with the requirements of Rule 9(j): the medical care rendered by defendants and all medical records pertaining to the alleged negligence that are available to plaintiff after reasonable inquiry have been reviewed before the filing of this complaint by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the care provided by defendants did not comply with the applicable standard of care.

59. If the Court later determines that plaintiff's 9(j) expert does not meet the requirements of Rule 702(b) or Rule 702(c), plaintiff will seek to have that person qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence, and plaintiff hereby moves the Court, pursuant to Rule 9(j)(2), to so qualify that person.

## MEDICAL EXPENSES ("BILLED VERSUS PAID")

60. Plaintiff objects to Sections 1.1 and 1.2 of Session Law 2011-283 (House Bill 542) as unconstitutional. These new legislative enactments, which apply to actions arising on or after October 1, 2011, violate Article IV, § 13(2) of the North Carolina Constitution, which provides that "No rule of procedure or practice shall abridge substantive rights or abrogate or limit the right of trial by jury." Sections 1.1 and 1.2 of House Bill 542 also violate the right to a jury trial, due process of law, equal protection under the law, and the right to open courts, and violate the separation of powers, in violation of Article I, sections 6, 18, 19, and 25, and Article IV, sections 1 and 13 of the North Carolina Constitution.

61. Plaintiff in this action has incurred medical expenses as a result of defendant's negligence. Under the law, plaintiff is entitled to recover her or her (or Ms. Chapman's) "medical expenses," including "all medical bills reasonably incurred by the plaintiff as a proximate result of the negligence of the defendant." N.C.P.I. Civil 810.04. Contrary to North Carolina substantive law, and in violation of the North Carolina Constitution, Sections 1.1 and 1.2 of House Bill 542 bar plaintiff from submitting evidence of these medical bills to the jury, and limit plaintiff to presenting "the amounts actually paid to satisfy the bills" and "the amounts actually necessary to satisfy the bills that have been incurred but not yet

9

satisfied." These new evidentiary and procedural rules, if applied in this case, will directly harm plaintiff by reducing the amount of medical expenses recoverable for Ms. Chapman's injuries.

## OBJECTIONS TO "CAPS" ON NONECONOMIC DAMAGES (SB33)

62. Plaintiff objects to N.C.G.S. § 90-21.19 ("the cap on noneconomic damages") as unconstitutional. The cap on noneconomic damages denies medical malpractice plaintiffs, including plaintiff in this action, the right to a jury trial, due process of law, equal protection under the law, and the right to open courts, violates the separation of powers, and confers an exclusive emolument on health care providers, in violation of the United States and North Carolina constitutions. The cap on noneconomic damages violates the Seventh and Fourteenth Amendments of the United States Constitution and Article I, sections 6, 18, 19,25 and 32 and Article IV, sections 1 and 13 of the North Carolina Constitution.

63. Objection to Retroactivity of Cap (SB33). Plaintiff objects to Section 11 of Session Law 2011-400 (Senate Bill 33) as unconstitutional. Section 11 provides that Section 7 of Session Law 2011-400, the cap on noneconomic damages, applies to all "actions commenced" on or after October 1, 2011. This action accrued before October 1,2011, but was commenced by the filing of this complaint after October 1, 2011. When Ms. Chapman sought the medical care that gave rise to this action, and when defendants violated the applicable standard of care in providing medical care to Ms. Chapman, North Carolina law permitted all medical malpractice plaintiffs to have their compensatory damages determined by a jury, with no statutory cap on damages. In enacting Sections 7 and 11 of Senate Bill 33 on July 25, 2011, the General Assembly retroactively changed the law for all persons whose medical malpractice action accrued before October 1, 2011, but who did not file suit until after October 1, 2011. Section 11 of Senate Bill 33 retroactively impairs vested property rights of persons injured by medical malpractice, including plaintiff/Ms. Chapman in this action, in violation of the right to a jury trial, due process of law, equal protection under the law, the right to open courts, the separation of powers, and the prohibition on exclusive emoluments, in violation of the United States and North Carolina constitutions. Section 11 of Senate Bill 33 violates the Seventh and Fourteenth Amendments of the United States Constitution and Article I, sections 6, 18, 19,25 and 32 and Article IV, sections 1 and 13 of the North Carolina Constitution.

10

WHEREFORE, Plaintiff prays:

1. That the Court award Plaintiff(s) all compensatory damages alleged, including special and general damages as alleged herein, for the survival and wrongful death claims alleged, in an amount exceeding $10,000.00.

2. That the Court award Plaintiff punitive damages in an amount exceeding $10,000.00;

3. That the Court award Plaintiff interest as allowed by law;

4. That the Court award Plaintiff the costs of this action;

5. That the Court award Plaintiff reasonable attorney fees as allowed by law;

6. That all issues so triable be tried by a jury; and

7. For such other and further legal or equitable relief that this Court deems just and proper under the circumstances.

Respectfully submitted this ___ day of March, 2016.

*[signature]*

David Pishko
Law Office of David Pishko, P.A.
100 North Cherry Street, Suite 510
Winston-Salem, NC 27101
N.C. State Bar No. 7969
Telephone: (336) 310-0088
Fax: (252) 565-0471
*Attorney for Plaintiff*

Thomas W. Pleasant
Pleasant Law, PLLC
PO Box 565
Wrightsville Beach, NC 28480
NC Bar No. 23474
(910) 509-7106 (Tel)
(910) 202-6481 (Fax)
*Attorney for Plaintiff*